■ S. DE LIA CONSTRUCTION CORP., Respondent, v. GREEN ISLAND CONTRACTING CORP., et al., Appellants.— Appeal from a judgment of the Supreme Court in favor of plaintiff, entered March 4, 1974 in Franklin County, upon a decision of the court at a Trial Term, without a jury. In this action to enforce a mechanic's lien, it appears that plaintiff, S. De Lia Construction Corp., entered into a contract with Whitney Industries, Inc., providing for the purchase of 60,000 cubic yards of gravel from a pit on Whitney's lands in the Town of Long Lake, Hamilton County, New York for use in a highway construction project. The contract also provided that, with the consent of Whitney, plaintiff could also purchase cubic yardage in excess of 60,000 cubic yards for sale to municipalities and others. The purchase price was 20 cents a cubic yard, and the term of the contract was from August 1, 1969 to December 1, 1970. At the expiration of the contract, there existed four stockpiles of gravel at the pit which had been processed by plaintiff. The plaintiff estimated that pile No. 1 contained about 14,000 cubic yards; pile No. 2 contained about 16,666 cubic yards; pile No. 3 contained about 4,000 cubic yards; and pile No. 4 contained about 3,000 cubic yards. The material in pile No. 4 is not involved in this action. An oral agreement was then entered into between plaintiff

and Whitney whereby it was agreed that plaintiff could keep the processed piles of gravel on Whitney's land providing a $2,000 deposit was continued, and plaintiff paid Whitney 20 cents per cubic yard for any gravel removed from the piles. In the month of March, 1971, plaintiff entered into an agreement with the Town of Altamont whereby the town agreed to "the purchase of 12,000 cubic yards of crushed gravel to be purchased and used over three years at approximately 4,000 cubic yards each year" at a price of $1.25 a cubic yard to be picked up by the town from the stockpiles on the Whitney lands. Prior to July 12, 1971, the Town of Altamont had taken 3,800 cubic yards from stockpile No. 2. On December 26, 1970, defendant, Green Island Contracting Corporation, entered into an agreement with Whitney for the purchase of 160,000 cubic yards of gravel and stone for use in a highway construction project at a price of 20 cents per cubic yard. During the latter part of May, 1971 or early June, 1971, Green Island began using the gravel stockpile by plaintiff pursuant to an agreement with the Town of Altamont that the material in stockpile No. 2 could be used if replaced and an agreement with Whitney that stockpile No. 3 could be used if replaced. Defendant, Green Island, also admits having taken 235 truck loads from stockpile No. 1 or 2,350 cubic yards. On June 27, 1971, plaintiff's superintendent, acting on information received that Green Island was using the stockpiles, confirmed this information by proceeding to the gravel pit. Whitney's assistant manager was then contacted and, on instructions from plaintiff, barricaded the pit during the first week of July, pending resolution of the dispute which had evolved from the use of the gravel by Green Island. There is evidence that plaintiff had offered to sell all of the gravel at the pit to Green Island for the sum of $30,000, which offer was rejected, and that defendant had made a counter-offer to purchase the same for the sum of $10,000 and that this counteroffer had also been rejected. There is a conflict in the testimony as to the time this offer and counteroffer were made, but it would appear that this occurred prior to any removal of gravel by Green Island, since there is evidence that Green Island at that time confirmed or agreed with plaintiff's computations as to the amount of gravel in the piles. In any event, the parties did not reach an agreement and plaintiff filed a mechanic's lien in the amount of $73,050 for 24,350 cubic yards of gravel against the funds due Green Island by the State on the highway project. The lien was discharged by the filing of a bond and this action was commenced to recover the sum of $73,050 allegedly due. Plaintiff admits that it sold 1,041 cubic yards to the State of New York from stockpile No. 1 at a price of $4.50 per cubic yard delivered, the charge for delivery being $2.50 per cubic yard. Green Island attempted to offer evidence of cross sections of the piles made on its behalf, but this evidence was rejected on the basis that a proper foundation had not been made for its admission and the offer was not further pursued. One of plaintiff's employees testified that he was in charge of bidding and pricing materials; that he had been involved in sales of material similar to that in the stockpiles; that a quantity had been sold to the Town of Altamont at a price of $1.25 a cubic yard; that a quantity had been sold to the State at a price of $4.50 per cubic yard, which consisted of $2 a cubic yard for gravel and $2.50 a cubic yard for hauling; that prices varied to as high as $4 per cubic yard and that $3 per cubic yard was the reasonable value of the materials stockpiled. No evidence was given of any sales at $3 or $4 per cubic yard. Green Island contended that plaintiff had no interest in the stockpiles since its contract had expired in December, 1970, and that pile No. 2, pursuant to section 2-401 of the Uniform Commercial Code, was owned by the Town of Altamont. Green Island also

counterclaimed for damages pursuant to section 39 of the Lien Law alleging a willful exaggeration of the lien in that plaintiff originally sought $30,000 for the gravel and the lien was in the amount of $73,050. The court determined that plaintiff was the owner of the gravel and had presented the only available and reliable measurements; that 24,763 cubic yards were taken which had a value of $3 per cubic yard, and awarded judgment to the plaintiff in the amount of $73,050. The court also dismissed the counterclaim. In its decision, the court discussed the fact that defendant had introduced evidence that stockpile No. 2 had only 9,300 cubic yards rather than 16,666 cubic yards by reason of the countour of the land and the possibility that others may have removed some gravel, but apparently rejected this evidence on the ground that plaintiff and defendant had agreed with the initial computations made by defendant. On this appeal, defendant contends (1) that the court made findings clearly against the evidence; (2) that plaintiff is estopped by its conduct from asserting ownership and recovering damages for the use of piles No. 2 and No. 3; (3) that plaintiff failed to prove it owned the stockpiled material, the amount of material taken by defendant and the value of the material; and (4) that the lien filed was willfully exaggerated and defendant is entitled to damages in the amount of $43,850. Defendant's contention that ownership of stockpile No. 2 under section 2-401 of the Uniform Commercial Code was in the Town of Altamont finds little support in the record. The actual contract with the town was not introduced into evidence. Under the bid notice, plaintiff could fulfill its obligation by providing 4,000 cubic yards of gravel each year for three years from any place within a 15-mile radius of the Village of Tupper Lake. Nothing indicates that the gravel was to be provided from the same place each year, or that the full 12,000 cubic yards were required to be in a stockpile at the time of execution of the contract or of awarding of the bid. Further, it appears from the bid notice that the town intended to purchase 4,000 cubic yards each year and not purchase 12,000 cubic yards with payment spread over three years. On the evidence, we agree that ownership of the stockpile was in the plaintiff, subject, however, to payment by plaintiff of 20 cents per cubic yard to Whitney upon removal of all or a portion thereof. Plaintiff introduced evidence by the testimony of its superintendent and by exhibits to establish that pile No. 1 contained 14,583 cubic yards; pile No. 2 contained 16,666 cubic yards, and pile No. 3 contained 3,022 cubic yards. From pile No. 1, plaintiff sold 1,041 cubic yards to the State and 4,667 cubic yards remained at the time. Green Island was stopped from further withdrawing material from the piles. From pile No. 2, plaintiff sold 3,800 cubic yards to the Town of Altamont, and the remainder of pile No. 2 and all of pile No. 3 were converted by Green Island, thus making the total of 24,763 removed by Green Island. In arriving at the value of the gravel, the court disregarded the actual sales made by plaintiff, and relied upon the testimony of the plaintiff's employee that the reasonable value was $3 per cubic yard. Even considering this witness as an expert witness, his testimony had no probative value in the absence of any facts as to sales at $3 or more per cubic yard. Conclusions not based upon facts delineated are inadmissible even from an expert. (*Hunt v. Johnson*, 259 App. Div. 292.) In this record, the only evidence of actual sales is at $1.25 per cubic yard to the Town of Altamont, and $2 per cubic yard to the State of New York. The court should have determined the value of the gravel to be $2 per cubic yard. The judgment should be reduced by awarding plaintiff damages for 24,763 cubic yards removed by Green Island at the price of $2 per cubic yard for a total of $49,526. We have considered the other issues raised and find no reason to disturb the findings of the trial

court. Judgment modified, on the law and the facts, so as to reduce the amount of the judgment to $49,526, and, as so modified, affirmed, without costs. Staley, Jr., J. P., Greenblott, Sweeney, Kane and Main, JJ., concur.